MANUELA SCHULER,          )
                                )
       Plaintiff,          )
                                )
Vs.                             )     **MEMORANDUM AND**
                                )     **RECOMMENDATION**
BRANCH BANKING & TRUST CO.,  )
                                )
       Defendant.      )
_____  )

      **THIS MATTER** is before the court on defendant's Motion for Summary

Judgment (#13). Having carefully considered the Motion (#13), the Response (#18),

and the Reply (#19), and read the evidentiary materials submitted, the court enters the

following findings, conclusions, and Recommendation that this action proceed to

trial.

## FINDINGS AND CONCLUSIONS

### I.    Background

      This is a Family Medical Leave Act ("FMLA") action in which plaintiff

contends that she was wrongfully terminated when she attempted to assert her rights

under the FMLA. The defendant contends that the plaintiff was not entitled to leave

under the FMLA and that the plaintiff did not give the defendant adequate notice of

her intention to take leave. The plaintiff contends the defendant should have advised

her of her FMLA right to take medical leave on the day it fired her, and granted her

that leave rather than terminating the plaintiff's employment, inasmuch as the

defendant either knew or had reason to know that the plaintiff needed medical leave.

## II.  Applicable Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are

reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a defendants' Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

## III. Admissible Evidence

### (A) The Plaintiff's Affidavit

In opposition of the defendants' Motion for Summary Judgment, the plaintiff filed her own affidavit (#18-2) setting forth various facts and circumstances which are referenced many times in the plaintiff's responsive brief (#18-2). The defendant, in its Reply Brief (#19), contends that: "to the extent Schuler's Brief and Affidavit contradict her deposition testimony, this evidence should be rejected and not considered by this Court." Def. Brief, p. 7. The defendant cites as authority Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984). The rule set forth in Barwick is that a party may not defeat summary judgment by offering an affidavit which contradicts unambiguous testimony previously listed during a deposition. The

defendant did not file a motion to strike the plaintiff's affidavit and only references this objection in the defendant's responsive brief. In the brief, the defendant cites only one instance where the plaintiff's deposition testimony allegedly contradicts the plaintiff's affidavit. In paragraph 13 of the plaintiff's affidavit the plaintiff avers that "on some days I was able to perform the duties of my job, on other days I could not." In her deposition, the plaintiff testified she could do all the duties of her job in January of 2007 except for smiling. Plaintiff Dep. p. 129. The undersigned will not consider the last sentence of ¶ 13 of the plaintiff's affidavit in considering the defendant's Motion for Summary Judgment.

(B)    Employment Security Commission Decision

The undersigned will not consider as evidence in this matter, the allegations contained in ¶20 of the plaintiff's Complaint that the Employment Security Commission determined that plaintiff had been terminated by the defendant without cause. Such a finding would be in violation of N.C.Gen.Stat. § 96-4(t)(8). The statute reads as follows:

> Any finding of fact or law, judgment, determination, conclusion or final order made by an adjudicator, appeals referee, commissioner, the Commission, or any other person acting under authority of the Commission pursuant to the Employment Security Law is not admissible or binding in any separate or subsequent action or proceeding, between a person and his present or previous employer brought before an arbitrator, court or judge of this State or the United States, regardless of whether the prior action was between the same or related parties or involve the same facts.

## IV.    Undisputed Facts

Inasmuch as it is the plaintiff opposing summary judgment, the undersigned

has considered all factual disputes in a manner most favorable to plaintiff. In doing so, however, it is not the intent of this court to finally resolve such factual issues and the following summary of the underlying facts is simply intended to aid the court in the review process and not bind the court or the parties at trial.

In September 2005, plaintiff began working for BB&T as a bank teller at its branch located on Parkwood Road in Asheville, North Carolina. Plaintiff's Depo. p. 15. Plaintiff's Aff. p. 3. She worked at BB&T's Parkwood Road branch until May 2006, when she was offered and accepted a transfer to BB&T's branch located in Waynesville, North Carolina. Plaintiff's Complt. ¶ 3. Def. Answ . ¶ 3. Plaintiff's Depo. pp. 3, 5, 7 & 15. Plaintiff worked at BB&T's Waynesville branch until she was terminated or resigned in January 2007. Plaintiff's Complt. and Def. Answ. Prior to her termination from BB&T, plaintiff purchased basic term and supplemental term life insurance, as well as disability insurance, all through BB&T. Plaintiff's Complt. ¶ 7. Def. Answ. ¶ 7.

The defendant is an employer subjected to the Family and Medical Leave Act (29 U.S.C. § 2601) Plaintiff's Complt. ¶ 4. Def. Answ. ¶ 4.

Melanie Lewis ("Lewis") and Lucy Lucinian ("Lucinian") supervised plaintiff while she worked at the Waynesville branch. Plaintiff's Aff. ¶ 4. Lewis was the teller supervisor at the Waynesville branch, and Lucinian was the branch manager. Plaintiff's Aff. ¶ 4. Part of plaintiff's job duties as a bank teller were to be cheerful and pleasant toward customers and to smile. Plaintiff's Aff. ¶ 5. Soon after plaintiff began working for BB&T, she won two awards acknowledging her outstanding

customer service.  Plaintiff's Dep. p. 15.  Plaintiff's Aff. ¶ 5.

During September 2006, approximately one year after she was hired, BB&T promoted plaintiff to the position of senior teller.  Plaintiff's Complt. ¶ 8.  Def. Answ. ¶ 8.  Plaintiff's Dep. 18-9.  Plaintiff's Aff. ¶ 6.  At the end of 2006 plaintiff began noticing a decline in her health.  Plaintiff's Aff. ¶ 7.  She began experiencing stomach problems, including stomach pain, cramping, nausea and vomiting, and developed a high fever and respiratory problems.  Plaintiff's Dep. 24-27.  Plaintiff's Aff. ¶ 7.  Initially plaintiff believed her health problems were caused by a flu virus that she would eventually get over; however, her problems continued to get worse.  Plaintiff's Dep. pp. 27-29.  Plaintiff's Aff. ¶ 7.

Plaintiff communicated the problems she experienced to both Lucinian and Lewis.  Plaintiff's Dep. pp. 25, 29.  Plaintiff's Aff. ¶ 8.  Plaintiff told them she had had fevers, cramping, vomiting, and nausea, and that she could not hold her food down.  Plaintiff's Dep. pp. 24, 29.  Plaintiff's Aff. ¶ 8.  On December 24th and 25th, that being Christmas Eve and Christmas Day, the plaintiff's health problems got so bad that she had to go to the emergency room for what her doctor believed, at the time, to be severe bronchitis that was about to turn into pneumonia.  Plaintiff's Dep. pp. 25, 27.  Plaintiff's Complt. ¶ 12.  Def. Answ. ¶12.  Plaintiff's Aff. ¶ 10.  The plaintiff was in the emergency room of a hospital overnight on December 24, 2006.  Plaintiff's Dep. p. 27.   The treating physician gave the plaintiff a note, the purpose of which was to allow the plaintiff to recuperate from December 26th through her return to work which was anticipated was to occur on December 28th.  Plaintiff's Dep.

pp. 27, 98.  The plaintiff's husband took the note to  the BB&T branch where the plaintiff worked and gave the note to Lewis and informed Lewis that due to her illness, the plaintiff could not return to work that week.  Plaintiff's Dep. p. 27.  Def. Answ. ¶ 12.  Plaintiff's Aff. ¶ 10.  Lucinian was unhappy with plaintiff for not reporting to work because other bank employees took vacation days during the Christmas season.  Plaintiff's Complt. 12.  Plaintiff's Aff. ¶ 10.

In January 2007 the stomach problems she experienced increasingly got worse. Plaintiff's Aff. ¶ 11.  Plaintiff avers that she developed excruciating back pain and stomach pain, and the cramping became unbearable. Plaintiff's Aff. ¶ 11.  Plaintiff began vomiting daily and having diarrhea, often at work.  Plaintiff's Dep. p. 79. Plaintiff's Aff. ¶ 11.  Plaintiff states that she continued to communicate the problems she experienced to both Lucinian and Lewis.  Plaintiff's Dep. pp. 78-79.  Plaintiff's Aff. ¶ 12.  Plaintiff told Lewis and Lucinian about the pain she was experiencing, the vomiting, the nausea, the diarrhea, and the bloating of her stomach.  Plaintiff's Dep. pp. 78-79.  Plaintiff's Aff. ¶ 12.  Lewis and Lucinian also knew that plaintiff continued to have trouble holding down food, and that plaintiff was suffering from stomach and intestinal problems.  Plaintiff's Dep. pp. 78-79.  Plaintiff's Aff. ¶ 12. Plaintiff continued to report to work because she feared that Lucinian would be angry with her if she did not.  Plaintiff's Aff. ¶ 12.

During this period, plaintiff's job performance began to suffer.  Plaintiff's Aff. ¶ 13.  Her ability to be cheerful and pleasant waned, and she no longer felt like smiling.  Plaintiff's Aff. ¶ 13.  Plaintiff, who had never received a verbal or written

warning from any of her supervisors during the first year she worked at BB&T, received a verbal warning at the end of 2006, and several verbal warnings and a written warning in January 2007, all from Lucinian.  Plaintiff's Aff. ¶ 14.  Lucinian told Plaintiff she was not cheerful enough and needed to smile more.  Plaintiff's Aff. ¶ 14.

On the morning of January 30, 2007, Lewis informed plaintiff that Lucinian wanted plaintiff to report to Lucinian's office for a meeting.  Plaintiff's Aff. ¶ 15.  Lewis was aware that plaintiff had been vomiting all morning.   Plaintiff's Dep. pp. 78-79.  Plaintiff's Aff. ¶ 15.  Plaintiff told Lewis that she preferred not to meet with Lucinian at that time because plaintiff was not feeling well.  Plaintiff's Dep. pp. 78-79.  Plaintiff's Aff. ¶ 15.  During this meeting, Lucinian planned to discuss with plaintiff the provisions of the Family Medical Leave Act ("FMLA"), and intended to provide plaintiff with an FMLA form.   Lucinian Dep. pp. 70, 71, 125, 126, 140.  Lucinian testified that she knew the plaintiff had been sick and had called in sick in December 2006.  Lucinian Dep. pp. 126, 126.   Lucinian also testified that she knew the plaintiff had an extreme number of absences due to illness.  Lucinian Dep. p. 140.  Lucinian also testified that no one discussed with the plaintiff the FMLA or the plaintiff's opportunity to take unpaid leave in January of 2007.  Lucinian Dep. pp. 71 and 140.  During the meeting, however, Lucinian again did not mention the FMLA to the plaintiff.    Plaintiff Aff. ¶ 16.  Lucinian Depo. pp. 125-126.   Lucinian did reprimand the plaintiff for, among other things, not being cheerful to customers and for plaintiff's lack of team work with her co-workers.  Plaintiff's Dep. pp. 32, 78, 79,

80. Plaintiff's Dep. Exh. 3. Plaintiff's Aff. ¶ 16. Plaintiff then told Lucinian that she needed to step out because she was not feeling well. Plaintiff's Dep. pp. 32, 78, 79, 80. Plaintiff's Aff. ¶ 16. Lucinian responded: "No. Take the day off and give me your keys." Plaintiff's Dep. pp. 32, 33. Plaintiff's Aff. ¶ 16. Plaintiff gave Lucinian her keys, and then left the bank, taking only her purse, leaving her personal items at her teller station. Plaintiff's Dep. p. 33. Plaintiff's Aff. ¶ 17.

After leaving the bank, plaintiff thought that Lucinian had permitted her to go home because she was so ill. Plaintiff's Dep. p. 33. Plaintiff's Aff. ¶ 17. Within a few minutes after leaving BB&T, plaintiff began to question why Lucinian asked her for her keys. Plaintiff's Dep. pp. 33, 34. Plaintiff's Aff. ¶ 18. Plaintiff telephoned Lewis to inquire about what had happened during the meeting. Plaintiff's Dep. pp. 33, 34. Plaintiff's Aff. ¶ 18. Lewis responded that she was not sure, but that she would call plaintiff back when she found out. Plaintiff's Dep. pp. 33, 34. Plaintiff's Aff. ¶ 18. When plaintiff spoke with Lewis and Lucinian several hours later, Lucinian advised her that she had resigned. Plaintiff's Dep. pp. 33, 34, 35. Plaintiff's Aff. ¶ 19. The plaintiff takes the position that she did not resign at any time and she was fired or terminated by the defendant. Plaintiff's Dep. pp. 34, 35.

After speaking with Lewis and Lucinian, plaintiff made several phone calls to BB&T's corporate branch, but no one ever returned her calls. Plaintiff's Dep. p. 35. Plaintiff's Aff. ¶ 19. When the plaintiff was terminated, she lost her basic term and supplemental term life insurance, as well as her disability insurance. Plaintiff's Aff. ¶ 20.

In the portions of the deposition of Lewis that were presented to the court it appears that Lewis had no recollection of any of the events described by either the plaintiff or Lucinian. Lewis Dep. pp. 3, 23, 35, 43. The only changes that Lewis testified that she noticed in the plaintiff was that her demeanor had changed toward the end of 2006.

Throughout February 2007 plaintiff's condition continued to get worse. Plaintiff's Aff. ¶ 21. In March 2007 or later[1] the plaintiff learned that she had pancreatic cancer, and that the stomach problems that she experienced in January 2007 were caused by this cancer. Plaintiff's Dep. pp. 66-67. Plaintiff's Aff. ¶ 27. Soon after the plaintiff learned she had cancer, she applied for disability benefits, and learned from the Social Security Administration that due to her cancer, she became disabled on January 2, 2007.[2] Plaintiff's Aff. ¶ 22.

In the deposition of Dr. Brian McKinley, Dr. McKinley testified that he treated the plaintiff for pancreatic cancer in March through August of 2007 including a hospitalization period from May 1, 2007 through her discharge on August 1, 2007. In this period an operation was performed upon the plaintiff for pancreatic cancer and the plaintiff received further treatment for pancreatic cancer. McKinley Dep. pp. 1-21. It was Dr. McKinley's opinion that the symptoms of stomach pain, vomiting and diarrhea experienced by the plaintiff in December of 2006 and January of 2007 were caused by the pancreatic cancer that had developed in the plaintiff. McKinley

---

[1] There is an immaterial factual dispute as to when plaintiff actually learned of the cancer; however, for purposes of this action, such date is immaterial as the date was after the date of termination.

[2] Such administrative determination may not be admissible at trial and the court has excluded it from consideration at the summary judgment stage.

Dep. pp. 18, 19, 21. In a letter dated December 16, 2008, Dr. McKinley gave his opinion that the plaintiff had a pancreatic tumor present in her body in January of 2007 and that tumor had been growing for an undetermined period of time. Defendant's Exh. 5.

## V. Discussion

### A. The FMLA

In this action, plaintiff contends that defendant interfered with and retaliated against her for exercising her rights under the FMLA. Under the FMLA, an eligible employee has the right to take up to twelve weeks leave from work during any twelve-month period because of a serious health condition that makes the employee unable to perform the functions of her job. 29 U.S.C. § 2612(a)(1)(D). An employer who prevents or impedes an employee from, or retaliates against an employee for, exercising her FMLA rights is liable to the employee for damages. 29 U.S.C. §§ 2615(a), 2617(a); see also 29 C.F.R. § 825.220 (b) and (c).

To establish an FMLA interference claim, an employee must prove that: "(1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." Rodriguez v. Smithfield Pckg. Co., 545 F. Supp. 2d 508, 516 (D. Md. 2008) (citation omitted). When an employer's termination of an employee "would have occurred whether or not the employee had requested FMLA leave, an FMLA interference claim cannot be sustained." Wright v. Southwest Airlines Co., 2008 U.S. Dist. LEXIS 66659 at *14 (D. Md. Aug. 21, 2008) (citation omitted); 29

U.S.C.A. § 2614(a)(3)(B); 29 C.F.R. § 825.216 (2005).

The undersigned will now address the evidence to see if the plaintiff has a FMLA claim.

**(1)     Was the plaintiff an eligible employee?**

29 U.S.C. § 2611(2) defines the term "eligible employee" as "an employee who has been employed----

(i) for at least 12 months by the employer with respect to who leave is requested under section 2612 of this title; and

(ii) for at least 1,250 hours of service with such employer during the pervious 12 month period."

The evidence presented shows that the plaintiff had been working for the defendant since September of 2005 until the time she either resigned or was terminated on January 30, 2007.   It further appears from all of the documents presented that the plaintiff was a full-time employee.   The first element of the Complaint of the plaintiff's claim shows that she was an eligible employee.

**(2)     Was the employer covered by the statute?**

The defendant has admitted in it's Answer that it is an employer subject to the Family Medical Leave Act.   This issue must be resolved in favor of the plaintiff's claim.

**(3)     Was the plaintiff entitled to leave under the Family Medical Leave Act?**

21 U.S.C. § 2621(a)(1) provides as follows:

Subject to section 2613 of this title, the eligible employee shall be entitled to a total of 12 work weeks of leave during any 12-month period for one or more of the following:

(D)    because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2611(11) defines the term "serious health condition" as an illness, injury, impairment, or physical or mental condition that involves ----

(A)    Inpatient care in a hospital, hospice, or residential medical care facility; or

(B)    Continuing treatment by a health care provider.

The regulations that have been established to administer the FMLA that were in effect in December 2006 and January 2007 provide assistance in determining whether the plaintiff was suffering a serious health condition. 29 C.F.R. § 825.114 (a)(1) provides as follows:

For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:

(1)    *Inpatient care* (*i.e.* an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity (for purposes of this section, defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom), or any subsequent treatment in connection with such inpatient care.

The plaintiff has presented evidence that could be considered to show that the plaintiff did have an overnight stay in the hospital. On December 24 and 25, that being Christmas Eve and Christmas Day of 2006, the plaintiff's health problems had progressed to the point that she went to the emergency room at the hospital. The plaintiff, on one occasion, spent the entire night at the hospital. On December 26, the

treating physician gave the plaintiff a note, the purpose of which was to present to the plaintiff's employer so that the plaintiff could have a period of recuperation. The plaintiff did not return to work until December 28, 2006.

The Code of Federal Regulations in 29 C.F.R. § 825.114(a)(2) also provides that a serious health conditions involves:

> (a)(2) *Continuing treatment* by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

> (i)    A period of *incapacity* (*i.e.,* inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

> (A)    Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider, or

> (B)    Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

The plaintiff's evidence shows that the plaintiff visited the emergency room on December 24 and 25, 2006, that being Christmas Eve and Christmas Day. Plaintiff's Dep. p. 25. The plaintiff obtained, on December 26, 2006 a letter from the emergency room physician which was to allow the plaintiff time off from work so that she could recuperate. Plaintiff's Dep. p. 27. This note was delivered to the defendant by the plaintiff's husband delivering the note to Lewis. Plaintiff's Dep. p. 27. As a result, there is evidence the plaintiff had an inability to work that lasted more than three

consecutive calendar days, that being December 24, 25, 26 and 27.  The evidence also shows the plaintiff went to the emergency room two times.  Taking the evidence in the light most favorable to the plaintiff, plaintiff can show a serious health condition under this section of the regulations.

Another test set forth under 29 C.F.R. 825.114(a)(2)(iii) by which the plaintiff can establish that she had a serious health condition is by establishing the following:

> (iii)   Any period of incapacity or treatment for such incapacity due to a chronic serious health condition.  A chronic serious health condition is one which:
>
> (A)    Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>
> (B)    Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (C)    May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

The plaintiff has presented evidence that in December of 2006 and January of 2007, she had developed pancreatic cancer.  The plaintiff did not know at that time she had developed such a condition but there is, without a doubt, evidence that she was extremely sick.   Since December of 2006 she had been suffering from excruciating back pain, stomach pain, daily vomiting and diarrhea.  Schuler Aff. 11. She had told both Lewis and Lucinian of these conditions.  Plaintiff's Aff. ¶¶ 8, 12. Within five weeks after either her termination or resignation, the plaintiff began a series of visits and diagnostic procedures beginning on March 7 that resulted in a subsequent hospitalization and operation that required her admission to the hospital

on May 1, 2007 and a discharge three months later on August 1, 2007. The plaintiff and her physician both testified that her health condition caused her to be able to work during some periods but have episodic periods of incapacity. The undersigned finds that a jury could find in favor of the plaintiff based upon this criteria.

Another criteria set forth by 29 C.F.R. 825.114(a)(2)(iv) by which the plaintiff can establish a serious health condition reads as follows:

> (iv) A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

Assuming that the jury finds that the plaintiff was terminated by the defendant rather than the plaintiff resigning her position, the jury could find that beginning on at least March 7, 2007 that the plaintiff would be suffering from a condition which could cause a period of incapacity which is either permanent or long-term. Pancreatic cancer is known to be a permanent disease for which there is not a likely good result.

A final method by which the plaintiff can show by use of the regulation a serious medical condition is the portion of the regulation that reads as follows:

> (v) Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis). 29 C.F.R. 825.114(a)(2)(v).

The evidence presented by the plaintiff shows that by December of 2006 she had developed pancreatic cancer and she had a period of incapacity of more than three consecutive calendar days. Indeed, the testimony of Lucinian shows that the plaintiff had had absences from work in December and January from her illness, and that Lucinian intended to present the plaintiff with an illness certification so that her absences from work would be excused under the FMLA. Lucinian Dep. pp. 125, 126.

In total, the plaintiff has presented evidence from which a jury could find that the plaintiff was suffering from a "serious health condition"

### 4. Did the plaintiff provide sufficient notice of her intent to take leave?

It is undisputed that plaintiff never told her employer that she intended to take FMLA leave prior to the time she was fired.[3] The only issue is whether defendant knew or had reason to know that plaintiff was suffering from a serious health condition and needed to take FMLA leave.

In this inquiry, the undersigned is guided by the decision of the Court of Appeals for the Seventh Circuit in <u>Burnett v. LFW, Inc.</u>, 472 F.3d 471 (7th Cir. 2006). While the undersigned agrees with defendant that the plaintiff in <u>Burnette</u> communicated a great deal more about his medical symptoms to his employer, the court finds the case to be instructive on the issue of whether an employer had reason to know that its employee was suffering from a serious health condition. Under

---

[3] There is a factual dispute as to whether plaintiff resigned or was fired and the undersigned has resolved that issue, for the limited purpose of the pending motion, in favor of the party resisting summary judgment.

Burnette, the appropriate inquiry is whether "circumstances provide the employer with sufficient notice of the need for medical leave." Id., at 479. Such inquiry necessitates an individualized review of the facts with which the employer was confronted in each case.

In conducting such individualized review, and unlike the facts presented in any other cases the court has found addressing this or similar issues,[4] it is undisputed that Ms. Lucinian came to the final meeting at which plaintiff was terminated with an FMLA form. Ms. Lucinian testified at her deposition as follows:

Q.     Do you know if . . . anyone discussed with [plaintiff] the FMLA . . . ?

* * *

A.     I tried but I didn't get that far.

* * *

A.     It was the day she walked out. I had a, we were having a corrective action meeting and, uh, I had written up a warning . . . . And I was – oh, I had also printed out a blank FMLA paper for her to take to her doctor because of her December absence in case she wanted to give it to him, but she walked off before I was even able to discuss that with her.

Lucinian Depo., at 70-71. When questioned further about why she had intended to give the FMLA form to plaintiff, Ms. Lucinian testified as follows:

After six absences, it doesn't look good to have so many absences, even though they do allow you 40. So I was trying to make it an excused absence by having her fill it out.

---

[4]     Brown v. Eastern Maine Medical Center, 514 F.Supp.2d 104 (D.Me. 2007); Cavin v. Honda of America Mfg., Inc., 346 F.3d 713, 724-725 (6th Cir.2003); de la Rama v. Illinois Dept. of Human Services, 541 F.3d 681(7th Cir. 2008).

Id., at 126.  She further testified that the FMLA form was used by BB&T as a form to excuse paid sick leave, because plaintiff had:

> an extreme number of absences that was considered by the bank . . . they don't like you to have more than six days.  I was trying to help her in case any of those sicknesses could be excused, that a doctor might be able to fill out a note for her.

Id., at 140.  When questioned as to why the note the doctor filled out in December 2006 and which was delivered by plaintiff's husband was insufficient, Ms. Lucinian answered: "I didn't know where it was, I couldn't find it."  Id., at 126.

Ms. Lucinian's testimony raises a genuine issue of material fact as to whether the defendant had notice the plaintiff was suffering from a serious medical condition. While it is certainly possible that a jury would believe Ms. Lucinian's testimony as to why she brought an FMLA form to the meeting, it is very possible that a jury would give very little credit to a story that BB&T used FMLA leave forms as medical excuse forms for paid non-FMLA leave.  Such a conclusion adverse to defendant would find further support in the undisputed fact that a doctor's note had already been issued and delivered to Ms. Lucinian.  Further, a jury could conclude that Ms. Lucinian - - who apparently had daily interaction with plaintiff at the branch office, who was aware of her "extreme number of absences," and was  aware of the symptoms plaintiff was presenting with at work - - knew that plaintiff was then suffering from a serious medical condition and that was the real reason she brought the FMLA form to the meeting.  Id., at 140.

While the court is not to weigh the evidence or determine credibility on summary judgment and is not doing so here, it would appear that plaintiff would have a sound jury argument that Ms. Lucinian knew that plaintiff was suffering from a

serious medical condition, that she brought the form to the meeting to advise plaintiff of her right to seek medical leave, but that she failed to do so and instead fired plaintiff when plaintiff had to leave the meeting citing the same medical symptoms that had caused Ms. Lucinian to bring the form to the meeting in the first place. Additionally, the jury could find that Lucinian was requesting a certification from the plaintiff, pursuant to 29 U.S.C. § 2613, inasmuch as the employer may require that a request for leave be supported by a certification by a health care provider of the eligible employee. Under any of these scenarios, there is sufficient evidence upon which the jury could find in favor of the plaintiff as to this issue.

> 5. **Did the defendant deny the plaintiff Family Medical Leave benefits to which she was entitled?**

In total, the plaintiff has shown evidence upon which a jury could reasonably base a verdict in favor of the plaintiff as to whether or not she was entitled to FMLA benefits.

> B. **Retaliation**

To establish a *prima facie* case for retaliation under the FMLA, plaintiff must establish: (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between her protected activity and the adverse employment action. Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 551 (4th Cir. 2006).

If the plaintiff satisfies these elements, a *prima facie* case is thus stated. Then under the framework of the *McDonald Douglas* analysis, the burden shifts to the defendant to put forth legitimate non-discriminatory reasons for its action. McDonald

Douglas Corp. v. Green, 411 U.S. 792 (1973).  Upon satisfaction of this burden the plaintiff must then prove that the non-discriminatory explanation put forth by the defendant is a pretext for discrimination.

Based upon the findings previously made by the undersigned, it appears that the plaintiff has met the first two criteria.  As to the third requirement, the plaintiff can show the requisite causal connection by showing "a close temporal proximity" between the exercise of the protected activity and the adverse employment action.  Blankenship v. Buchanan Gen. Hosp., 140 F. Supp. 2d 668, 675 (W.D.Va. 2001).  In this case it was shown that plaintiff was terminated when the defendant determined the plaintiff needed leave pursuant to FMLA.  Thus the final element of the plaintiff's *prima facie* case exists.

The defendant has not proffered any reason for the plaintiff's termination.  It is the contention of the defendant that the plaintiff resigned.  The undersigned is of the opinion that the defendant has not put forth a legitimate non-discriminatory reason for its action and as a result, the plaintiff has presented sufficient evidence of an FMLA action retaliation claim and the Motion for Summary Judgment of the defendant should be denied.  It appears from the defendant's evidence that the purpose of the meeting was to deliver to the plaintiff a written warning (document #15-4, Exhibit 3) and was not to terminate the plaintiff.  It would thus appear to the undersigned that if the jury finds that the defendant terminated the plaintiff, the defendant has not put forth a legitimate non-discriminatory reason for such action and as a result, the plaintiff has presented sufficient evidence of a FMLA action

retaliation claim and the motion for summary judgment of the defendant should be denied.

## C.    Wrongful discharge claim

In a third cause of action that the plaintiff has set forth in her Complaint, the plaintiff has alleged that she was discharged in violation of North Carolina public policy in that the defendant violated North Carolina public policy when it discharged the plaintiff from employment due to the plaintiff's attempt to exercise her rights under the FMLA.  Plaintiff's Complt. ¶¶ 47, 48.  Later in the Complaint, the plaintiff also alleges that the defendant terminated the plaintiff based upon the plaintiff's attempt to comply with a posted company policy.  Plaintiff's Complt. ¶ 51.

Under North Carolina Law, unless an employee has accepted a definite term of employment, he is an employee "at will" and may be fired at any time.  Coleman v. Thomas Mfg. Co., 325 N.C. 172 (1989).  However, even an "at will" employee may not be terminated for unlawful reasons or for reasons that violate public policy. Id.  Public policy is violated where an employer terminates an employee "in contravention of express policy declarations contained in the North Carolina General Statutes."  Amos v. Oakdale Knitting Co., 331 N.C. 348 (1992).  The issue is, based upon the allegations in the plaintiff's Complaint, whether a violation of the FMLA constitutes a violation of North Carolina public policy.  An examination of the law shows that there is a disagreement, at least within the districts, as to this issue.  In Baucom v. Cabarrus Eye Center, P.A., (2007 WL-1074663) (M.D.N.C.) The district court found that a FMLA violation does not constitute or create a public policy

exception to the "at will" employment doctrine. Buser v. Southern Food Service, Inc., 73 F.Supp. 2d 556 (1999). The plaintiff has cited O'Neill v. Henderson County Hospital Corp. 205 W.L. 37973944 (2005) in which United States District Court Judge Lacy Thornburg found that termination based upon a FMLA violation could constitute a public policy exception to the "at will" employment doctrine.

The undersigned finds the opinion of Judge Thornburg to be persuasive and finds that based upon the evidence presented and considering it in the light most favorable to the plaintiff, that a jury could find that the plaintiff had been terminated by the defendant based upon the defendant fearing that the plaintiff was seriously ill and either had requested or was going to request medical leave. The evidence shows that Lucinian, the defendant's manager, became angry at any time the plaintiff was ill and not able to report for work. Schuler Aff. ¶ 9. A genuine issue of material fact has been presented and the undersigned will recommend that the defendant's Motion for Summary Judgment as to that portion of the plaintiff's wrongful discharge claim be denied.

The plaintiff has also presented in this cause of action an allegation that the defendant terminated the plaintiff for attempting to comply with the posted company policy in violation of North Carolina public policy. An examination of the evidence presented does not show that any evidence was presented as to this portion of the plaintiff's claim for wrongful termination and as a result, the undersigned will recommend that the defendant's Motion for Summary Judgment as to whether or not the plaintiff was terminated for failure to comply with the posted company policy be allowed.

In the cause of action that the plaintiff has presented for wrongful termination, the plaintiff has requested an award of punitive damages. This award would be under State law. N.C.Gen.Stat. § 1D-15 provides as follows:

(a)     Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:

(1)     Fraud.
(2)     Malice.
(3)     Willful or wanton conduct.

(b)     The claimant must prove the existence of an aggravating fctor by clear and convincing evidence.

(c)     Punitive damages shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another. Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

(d)     Punitive damages shall not be awarded against a person solely for breach of contract. (1995, c. 514, s. 1.)

A plaintiff may be entitled to punitive damages if the plaintiff is able to demonstrate wrongful discharge in violation of public policy. <u>Roberts v. First Citizens Bank & Trust Co.</u>, 124 N.C. App. 713 (1996). Due to the fact that sufficient evidence has been shown whereby a jury could find in favor of the plaintiff as to a claim for wrongful discharge in violation of public policy, the plaintiff may also be entitled to punitive damages. The undersigned will recommend that the defendant's Motion for Summary Judgment as to this issue be denied.

**D.     Conclusion**

Finding that a genuine issue of material fact is presented on plaintiff's claims, the undersigned will respectfully recommend that the defendant's Motion for Summary Judgment be denied except for plaintiff's allegation that the plaintiff was terminated for attempting to comply with the posted company policy and as to that portion of the plaintiff's Complaint, the undersigned will recommend that the defendant's motion be allowed.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion for Summary Judgment (#13) be **DENIED** except as to the portion of the plaintiff's Complaint that alleges that the plaintiff was wrongfully discharged for violation of company policy and as to that portion of the plaintiff's Complaint, the undersigned will recommend that defendant's Motion for Summary Judgment (#13) be **ALLOWED**.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **ten (10)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: July 27, 2009

Dennis L. Howell
United States Magistrate Judge