# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL CASE NO. 1:08cv378

| | |
|---|---|
| MANUELA SCHULER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>BRANCH BANKING & TRUST CO., )<br>)<br>Defendant. )<br>_____) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's Motion for Summary Judgment [Doc. 13] and the Defendant's Objections [Doc. 21] to that portion of the Memorandum and Recommendation [Doc. 20] of the Honorable Dennis L. Howell, United States Magistrate Judge, recommending that the Defendant's Motion be denied.

## I.  PROCEDURAL BACKGROUND

The Plaintiff Manuela Schuler brought this action against the Defendant Branch Banking & Trust Co. ("BB&T"), alleging that BB&T had interfered with her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA") and that she was terminated from her

employment from BB&T because she attempted to exercise her rights under the FMLA. Schuler also asserts a claim for wrongful discharge, alleging that BB&T violated North Carolina public policy when it discharged her from employment based on her attempt to her exercise her rights under the FMLA and her endeavor to abide by company policy. [Doc. 1-3 at 5-7].

BB&T moved for summary judgment with respect to all of Schuler's claims. [Doc. 13]. Pursuant to 28 U.S.C. § 636(b) and the standing Orders of Designation of this Court, the Defendant's Motion for Summary Judgment was referred to the Magistrate Judge for a recommendation as to disposition. On July 27, 2009, the Magistrate Judge entered a Memorandum and Recommendation setting forth his recommendation that the Defendant's Motion for Summary Judgment be denied except as to the portion of the Plaintiff's Complaint that alleges that the Plaintiff was wrongfully discharged for attempting to comply with company policy.[1] [Doc. 20]. The Defendant filed timely Objections on August 13, 2009 [Doc. 21], and the Plaintiff filed a Response to the Defendant's Objections on

---

[1] Neither party objects to the Magistrate Judge's Recommendation that Schuler's claim for wrongful discharge based upon her attempts to comply with company policy should be dismissed.

August 31, 2009. [Doc. 25]. Having been fully briefed, this matter is now ripe for disposition.

## II.     STANDARD OF REVIEW

A party may file written objections to a magistrate judge's memorandum and recommendation within ten days after being served with a copy of the recommended disposition. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Such objections must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert. denied, 551 U.S. 1157, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As the Supreme Court has observed, 'this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d (1986)) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

> A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. Furthermore, neither unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.

Id. (internal citations and quotation marks omitted). Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. See Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. PLAINTIFF'S FORECAST OF EVIDENCE

BB&T makes two specific objections to the Magistrate Judge's recounting of the Plaintiff's forecast of evidence. First, it contends that the Magistrate Judge erred in stating that Schuler had presented evidence that she had "visited the emergency room on December 24 and 25, 2006, that

being Christmas Eve and Christmas Day." [Doc. 20 at 14]. BB&T argues that there is no evidence to support this statement, and that the forecast of evidence shows that Schuler visited the emergency room only on the evening of December 25, 2006 and that she was discharged the following morning.

In her deposition, Schuler testified that in December 2006, her husband "made [her] go to the emergency room on *Christmas Eve, and Christmas Day.*" [Schuler Dep., Doc. 15-3 at 9] (emphasis added). The Defendant contends that subsequent to this testimony, Schuler "clarified that she did not have a separate visit to Haywood Regional on December 24, 2006, contrary to what she initially indicated in her deposition." [See Doc. 21 at 3 n.3]. A review of the cited portions of Schuler's testimony reveals, however, that there was no such "clarification" by Schuler on this point. Schuler was subsequently questioned about a patient registration sheet, which was introduced as Exhibit 8 to her deposition, reflecting that Schuler was admitted to the Haywood Regional Medical Center emergency room at 10:51 p.m. on the evening of December 25, 2006. [Schuler Dep., Doc. 15-3 at 25, 26; Schuler Dep. Ex. 8, Doc. 15-4 at 1]. She confirmed that during this visit, she stayed in the emergency room overnight and was

6

released sometime the following morning. [Schuler Dep., Doc. 15-3 at 25]. Schuler was not specifically asked about an emergency room visit on December 24, 2006, and there is no indication, at least in the excerpts of her deposition testimony presented to the Court at this stage in the proceedings, that she ever affirmatively retracted her original testimony regarding this visit. The Magistrate Judge's determination that the Plaintiff visited the emergency room twice in December 2006 is consistent with the Plaintiff's testimony, and therefore, the Court declines to modify this determination.

Next, BB&T argues that the Magistrate Judge erred in stating that the Plaintiff had presented a forecast of evidence that her "health condition caused her to be able to work during some periods but have episodic periods of incapacity." [Doc. 20 at 16]. BB&T argues that this statement is in error because it appears to be based upon affidavit testimony which the Magistrate Judge had stated would be excluded from consideration on the grounds it contradicted the Plaintiff's earlier deposition testimony regarding her ability to perform the functions of her job. [Doc. 21 at 12, citing M&R, Doc. 20 at 4].

The Court overrules the Defendant's objection on this point. The Plaintiff's testimony, taken in the light most favorable to her, shows that among the essential duties of her job were to be pleasant and cheerful to customers and to smile. [See Schuler Aff., Doc. 18-2 at ¶5]. The Plaintiff's testimony further establishes that while she attempted to perform her job to the best of her ability, her health condition was affecting her ability to perform these particular duties:

> Q. In January of 2007 were you performing all the duties that were asked of you as a teller?
>
> A. Yes, sir.
>
> Q. Were you doing the job to the best of your ability?
>
> A. Yes, sir.
>
> Q. Were there any duties of a teller that you couldn't do in January of 2007?
>
> A. At that time I had the duties of a senior teller. *No, except for the smiling part, I guess, I did my best, but all the other stuff I could do.*

[Schuler Dep., Doc. 19-5 at 5] (emphasis added). Schuler's subsequent affidavit testimony is entirely consistent with her testimony that her ability to be cheerful and pleasant toward customers had been compromised by her health condition:

> As a result of my health, my job performance began to suffer. My ability to be cheerful and pleasant waned, and I no longer felt like smiling. On some days I was able to perform the duties of my job, on other days I could not.

[Doc. 18-2 at ¶13]. This affidavit testimony does not contradict Plaintiff's deposition testimony; to the contrary, it reinforces the Plaintiff's prior deposition testimony that her ability to perform *all* of her job duties, including smiling and being cheerful and pleasant toward customers, was compromised, at least on an intermittent basis, by her health condition in the weeks leading to her discharge. This testimony supports the Magistrate Judge's determination that the Plaintiff had presented evidence to show that she was periodically unable to perform the duties of her job. For these reasons, the Court concludes that the Magistrate Judge's statement as to the Plaintiff's forecast of evidence in this regard is supported by the record, and therefore, the Defendant's Objection to the Memorandum and Recommendation as to this point is overruled.

After conducting a *de novo* review of the Magistrate Judge's statements as to the Plaintiff's forecast of evidence to which specific objections were made, and upon review of those portions of the Magistrate Judge's statement of the evidence to which no specific objections were

filed, the Court hereby adopts the Magistrate Judge's statement of the Plaintiff's forecast of evidence as set forth in his Memorandum and Recommendation filed on July 27, 2009 [Doc. 20 at 4-11].

## IV.  ANALYSIS

### A.  FMLA Claims

BB&T objects to the Magistrate Judge's conclusions that Schuler had presented a forecast of evidence from which a jury could conclude that she had a "serious health condition" entitling her to FMLA leave and that she had provided sufficient notice of her intent to take medical leave. [Doc. 21 at 2-16].

With regard to the existence of a "serious health condition," BB&T argues that evidence of Schuler's post-termination diagnosis of pancreatic cancer and her post-termination treatment for that condition should not be considered in determining whether she had a serious health condition at the time of her termination. The Court does not read the FMLA to be as restrictive as the Defendant suggests. The forecast of evidence, when viewed in the light most favorable to Schuler, shows that by December 2006, Schuler had developed pancreatic cancer and that she had begun

exhibiting symptoms related to that disease. Thus, despite the lack of a definitive diagnosis for her condition at the time of her termination, Schuler has presented a forecast of evidence to show that at the time of her termination she was suffering from a "serious health condition," as that term is defined by 29 U.S.C. § 2611(11) (2009) and the relevant regulations, 29 C.F.R. § 825.114(a)(1) and (a)(2) (2008). The Defendant's objection to the Magistrate Judge's conclusion in this regard is therefore overruled.

As for the issue of notice, the Court agrees with the Magistrate Judge that Schuler has presented a forecast of evidence to show that she provided BB&T "with sufficient notice of the need for medical leave." See Burnett v. LFW, Inc., 472 F.3d 471, 479 (7th Cir. 2006). Although Schuler did not know in December 2006 or January 2007 that she had developed pancreatic cancer, there is evidence that she was suffering from excruciating back pain, stomach pain, daily vomiting, and diarrhea, and that Schuler had informed her supervisors of these conditions. It is also undisputed that Schuler's supervisor brought an FMLA form to the final meeting at which Schuler was terminated. Viewing this forecast of evidence in the light most favorable to Schuler, the Court finds that a jury

could conclude that BB&T had sufficient notice that Schuler was suffering from a serious medical condition entitling her to leave under the FMLA. Accordingly, the Defendant's objection to this conclusion of the Magistrate Judge is also overruled.

B.  **Wrongful Discharge Claim**

BB&T next objects to the Magistrate Judge's conclusion that an alleged FMLA violation could serve as a basis for a claim of wrongful discharge in violation of North Carolina public policy. [Doc. 21 at 16-17].

The general rule in North Carolina is that "absent an employment contract for a definite period of time, both employer and employee are generally free to terminate their association at any time and without reason." Gravitte v. Mitsubishi Semiconductor Am., Inc., 109 N.C. App. 466, 472, 428 S.E.2d 254, 258 (1993), disc. rev. denied, 334 N.C. 163, 432 S.E.2d 360 (1993). One exception to this general rule is the public policy exception:

> While there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

Coman v. Thomas Mfg. Co., 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) (quoting Sides v. Duke Univ., 74 N.C. App. 331, 342, 328 S.E.2d 818, 826 (1985)).  North Carolina courts have recognized that "[t]he public policy exception to the employment-at-will doctrine is a 'narrow exception,'" Roberts v. First-Citizens Bank and Trust Co., 124 N.C. App. 713, 721, 478 S.E.2d 809, 814 (1997) (citation omitted), and is applicable only where "(1) the public policy of North Carolina is clearly expressed within [the] general statutes or state constitution, or (2) potential harm to the public is created by defendant's unlawful actions," McDonnell v. Guilford County Tradewind Airlines, Inc., 670 S.E.2d 302, 306 (N.C. Ct. App.), disc. rev. denied, 363 N.C. 128, 675 S.E.2d 657 (2009).

In concluding that Schuler could maintain a wrongful discharge claim under North Carolina law based upon a violation of the FMLA, the Magistrate Judge followed the reasoning of O'Neill v. Henderson County Hosp. Corp., No. Civ. 1:04CV68, 2005 WL 3797394 (W.D.N.C. Aug. 30, 2005), in which Judge Thornburg held that a termination based on a violation could constitute a public policy exception under North Carolina law.  2005 WL 3797394, at *5.  As the Magistrate Judge correctly noted, however, there is a disagreement among the district courts which have

addressed this issue.² The Middle District of North Carolina has held through a series of decisions that, in the absence of any express guidance from the North Carolina courts or legislature, federal courts should not expand the public policy exception to the at-will employment doctrine to include FMLA violations. See Buser v. So. Food Serv., Inc., 73 F.Supp.2d 556, 566 (M.D.N.C. 1999) ("While discharging an employee who has taken a valid leave of absence pursuant to the FMLA raises serious concerns for this Court, the Court nonetheless declines to hold, in the absence of North Carolina precedent, that this rises to the level of a public policy concern to justify creating a new and distinct Coman claim."); see also Brewer v. Jefferson-Pilot Standard Life Ins. Co., 333 F.Supp.2d 433, 439 (M.D.N.C. 2004) ("For the reasons set forth in Buser, this Court declines to hold that a violation of the FMLA creates a public policy exception to at-will employment."); Baucom v. Cabarrus Eye Center, P.A., No. 1:06CV00209, 2007 WL 1074663, at *7 (M.D.N.C. Apr. 4, 2007) ("without express

---

²The Court is not aware of any North Carolina court that has recognized a wrongful discharge claim predicated on alleged FMLA violations. Schuler's reliance on Garland v. Hatley, No. COA04-1131, 172 N.C. App. 591, 2005 WL 1949962 (Aug. 16, 2005), disc. rev. denied, 360 N.C. 174, 626 S.E.2d 296 (2005), is misplaced. In Garland, the North Carolina Court of Appeals did not reach the issue of whether a FMLA violation may serve as a basis for a claim for wrongful discharge in violation of public policy. See 2005 WL 1949962, at *3 ("plaintiff here makes *no showing* that she was discharged for any reason that contravenes public policy") (emphasis added).

14

guidance from the North Carolina courts or legislature, the court will not expand the public policy exception to the at-will employment doctrine to cover FMLA violations"); Gomoll v. Landura Mgmt. Co., No. 1:04CV00857, 2005 WL 1230788, at *2 (M.D.N.C. Apr. 28, 2005) (dismissing claim "to the extent [plaintiff] relies on any violation of the FMLA to establish a violation of North Carolina public policy"). Most recently, this Court followed this line of Middle District cases, finding them to be "well-reasoned" and "persuasive," and dismissed a plaintiff's claim for wrongful discharge in violation of public policy based upon an alleged FMLA violation. See Herndon v. TIAA-CREF Individual & Institutional Services, LLC, Civil No. 3:09cv120, 2009 WL 2426287, at *2 (W.D.N.C. Aug. 5, 2009).

The Court is, therefore, compelled to conclude that absent some express guidance from the North Carolina courts or legislature, the Court must decline to extend the North Carolina public policy exception to the at-will employment rule to include claims based on alleged violations of the FMLA. Accordingly, the Magistrate Judge's recommendation regarding the dismissal of this claim must, respectfully, be rejected.

## IV. CONCLUSION

For the reasons stated herein, the Court hereby accepts the Magistrate Judge's Recommendation that the Defendant's Motion for Summary Judgment be denied with respect to Schuler's claims for interference and retaliation under the FMLA. The Court rejects the Magistrate Judge's Recommendation that the Defendant's Motion for Summary Judgment be denied with respect to Schuler's claim for wrongful discharge in violation of North Carolina public policy to the extent that this claim is based on an alleged violation of the FMLA.

As to those portions of the Magistrate Judge's Memorandum and Recommendation to which no specific objections were filed, the Court finds and concludes upon careful review that these proposed findings of fact are supported by the record and that these proposed legal conclusions are consistent with current case law. Accordingly, the Court accepts the Magistrate Judge's Recommendation that the Defendant's Motion for Summary Judgment be granted with respect to Schuler's claim for wrongful discharge in violation of North Carolina public policy to the extent that this claim is based on her attempts to comply with company policy.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 13] is **DENIED** with respect to the Plaintiff's claims of retaliation and interference under the FMLA. The Motion [Doc. 13] is **GRANTED** with respect to the Plaintiff's claim for wrongful discharge under North Carolina law, and that claim is hereby **DISMISSED**.

**IT IS SO ORDERED.**

Signed: October 8, 2009

Martin Reidinger
United States District Judge